IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS VALDIVIA JR. et al., | |
| Plaintiffs, | Case No. 18-cv-3072 |
| v. | Judge Mary M. Rowland |
| WILLIAM BARR[1], Attorney General of the United States, et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the parties' cross motions for summary judgment [21] and [23]. Plaintiff Thomas Valdivia, Jr. ("Valdivia"), a United States citizen, brings this case pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, challenging the denial of his Form I-130 Petition for Alien Relative ("I-130 Petition"), filed on behalf of his husband, Plaintiff Radu Cheslerean ("Cheslerean"), a citizen of Romania. Valdivia and Cheslerean were married in May 2015. The bona fide nature of this marriage is not in dispute before this Court. However, on March 29, 2017, the United States Citizenship and Immigration Services ("USCIS") denied Valdivia's I-130 Petition under Section 204(c) of the Immigration and Nationality Act, 8 U.S.C. § 1154(c) because of Cheslerean's *prior* marriage. Under 8 U.S.C. § 1154(c), a Form 1-130 cannot be approved if the beneficiary has ever sought immigration benefits based on a marriage entered into to

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court substitutes Attorney General William Barr for former Attorney General Jefferson Sessions.

1

evade immigration laws (a "sham marriage"). The USCIS's decision was upheld on appeal by the Board of Immigration Appeals ("BIA") on December 14, 2017.

Plaintiffs request that the Court reverse the 2017 BIA decision. Defendants ask the Court to affirm that decision. For the reasons stated below, Plaintiffs' motion [21] is granted and Defendants' motion [23] is denied.[2]

**I. Legal Standards**

   **A. Administrative Standard and Burden of Proof**

When a United States citizen marries a non-citizen, the couple can file a Form I-130 to petition the government to recognize the non-citizen as a legal permanent resident. For the petition to be approved, the couple must persuade the government that they intended to establish a life together when they married. *Matter of McKee*, 17 I. & N. Dec. 332, 334–35 (BIA 1980). Separately, if USCIS finds that the non-citizen ever entered a sham marriage, it must deny the I-130 petition. 8 U.S.C. § 1154(c); *see also Ogbolumani v. Napolitano*, 557 F.3d 729, 733 (7th Cir. 2009).

Under the immigration regulations, 8 C.F.R. § 204.2(a)(1)(ii),

> Section 204(c) of the Act prohibits the approval of a visa petition filed on behalf of an alien who has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws. The director will deny a petition for immigrant visa classification filed on behalf of any alien for whom there is substantial and probative evidence of such an attempt or conspiracy, regardless of whether that alien received a benefit through the attempt or conspiracy.

The initial burden is on the government to identify substantial and probative evidence of marriage fraud. "[T]he evidence of such attempt or conspiracy must be

---

[2] Pursuant to Local Rule 78.3, Plaintiffs requested oral argument. The Court has discretion to allow oral argument but does not require it in this case and denies that request.

2

documented in the alien's file and must be substantial and probative." *Matter of Tawfik*, 20 I. & N. Dec. 166, 167 (B.I.A. 1990). Only if that is established does the burden shift to the couple to refute that finding. *Matter of Kahy*, 19 I. & N. Dec. 803, 807 (B.I.A. 1988).

**B. Standard of Review**

The APA governs this Court's review of the final decision by the BIA. 5 U.S.C. §§ 702, 704. On appeal to this Court, the facts are drawn from the certified administrative record. Dkt. 14; *see Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 856 (7th Cir. 2009) (under the APA, review of agency's decision limited to the administrative record). "The APA requires that an agency's decision be set aside only if it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence in the case, or not in accordance with law." *Fliger v. Nielsen*, 743 F. App'x 684, 687 (7th Cir. 2018) (citation and quotations omitted). The agency decision must stand if a "reasonable mind could find adequate support for the decision." *Id.* at 688 (citation omitted). "The factual findings underlying the INS's decision that [the] marriage…violated Section 204(c) of the Act must be supported by substantial evidence….Substantial evidence is evidence a reasonable mind would find adequate to support a conclusion." *Ghaly v. INS*, 48 F.3d 1426, 1431 (7th Cir. 1995) (internal citation omitted).

"The scope of review…is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection

3

between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "[W]e may not supply a reasoned basis for the agency's action that the agency itself has not given." *Id.* (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## II. Factual Background

### A. Cheslerean's previous and current marriage

On February 4, 2006, Cheslerean, a Romanian citizen, married Nina Garcia, a U.S. citizen. (PSOF ¶¶3–4).[3] Cheslerean and Garcia met on December 31, 2005 at a New Year's Eve party, about one month before they married. *Id.* at ¶35; GSOF ¶1. Seven months later on August 24, 2006, Garcia filed a I-130 petition with USCIS on Cheslerean's behalf. PSOF ¶5. On November 14, 2006, Garcia and Cheslerean, accompanied by attorney Vizer, were interviewed at the USCIS Chicago Field Office. *Id.* at ¶6. On July 31, 2009, the USCIS FOD ("Director") issued a Notice of Intent to Deny (NOID) Garcia's I-130 petition. *Id.* at ¶23. In September 2009, USCIS denied the petition, and Garcia's appeal was dismissed by the BIA in February 2011. *Id.* at ¶50. On September 12, 2011, Cheslerean and Garcia were divorced. *Id.* at ¶53. Their Judgment for Dissolution of Marriage states that they "lived separate and apart as of March 15, 2007." *Id.* Cheslerean and Garcia did not have any children together or separately at the time of their divorce. *Id.* at ¶54.

On May 17, 2015, Cheslerean married Valdivia, a U.S. Citizen. *Id.* at ¶55. On September 6, 2016, Valdivia filed a I-130 petition on behalf of Cheslerean. *Id.* at ¶56.

---

[3] PSOF is Plaintiffs' Statement of Facts with Defendants' Reponses (Dkt. 29-1). GSOF is the Government's Statement of Facts with Defendants' Reponses. (Dkt. 29-12).

Cheslerean and Valdivia were interviewed at the USCIS Chicago Field Office on January 12, 2017. *Id.* at ¶57. After receiving a notice of intent to deny, Cheslerean submitted an affidavit discussing his two marriages. GSOF ¶9. The affidavit stated in part that in his "relationship with Nina, we did not plan ahead, or have insurance or much other evidence of a commingled life because we had very little money, and any savings we had we would just spend. We were young and immature and didn't think about the future or plan ahead." *Id.* As to his relationship with Valdivia, Cheslerean stated that he grew up in a conservative Christian orthodox family that treated homosexuality as a sin, and "Coming to terms with who I am and living my life authentically as a gay man was a painful journey and it took me a lot longer than it takes other gay men these days." *Id.* ¶¶9–10. On March 29, 2017, the Director denied Valdivia's petition. PSOF ¶68. The BIA dismissed Valdivia's appeal on December 14, 2017. *Id.* at ¶74.

### B. The USCIS and BIA Decisions

On March 29, 2017, the USCIS Director denied Valdivia's I-130 Petition as prohibited under INA 204(c). (A.R. at 37–40). Referring to the September 2009 denial of Garcia's I-130 petition, the Director noted that the 2009 decision concluded that Garcia and Cheslerean did not demonstrate by preponderance of the evidence that their marriage was entered into in good faith. (*Id.* at 39). The Director continued: "Although USCIS carefully considered the statements made in regards to the current Notice of Intent to Deny (NOID), they are insufficient to warrant a favorable decision. They mainly reiterate what was stated in statements previously submitted in regards

5

to the marriage of Ms. Garcia and Mr. Cheslerean. Based on a review of the record, USCIS finds that the approval of your Form I-130 is prohibited under INA 204(c)." (*Id.*)

On December 14, 2017, the BIA, reviewing the March 29, 2017 USCIS decision, dismissed the appeal. (*Id.* at 3–4). The BIA stated that the Director denied the petition "because the beneficiary had previously entered into a prior marriage for immigration purposes." (*Id.* at 3). The BIA stated it had reviewed the record and "agree[d] with the Director that the record contains substantial and probative evidence which supports a finding that the beneficiary's prior marriage was entered into for the purpose of evading the immigration laws." (*Id.* at 4). The BIA explained, "In September 2009, the visa petition was denied under section 204(c) because Ms. Garcia had not presented evidence of a shared life together (including lack of commingled financial assets), which suggested that Ms. Garcia had married the beneficiary for the purpose of providing him with immigration benefits." (*Id.*) The BIA concluded, "we agree with the Director that the evidence and findings in the record constitute substantial and probative evidence of the beneficiary's prior marriage fraud." (*Id.*).

**III. Analysis**

The question for this Court is whether a reasonable mind could find adequate support for the BIA's 2017 decision that there was substantial and probative evidence of a sham marriage between Cheslerean and Garcia. This Court cannot conclude that substantial evidence supports the BIA's decision.

6

### A. The Parties' Burdens

As multiple courts in this district have stated, a "finding of fraud requires more than a finding that a couple failed to prove that their marriage is *bona fide*…If the government identifies substantial and probative evidence that a marriage is fraudulent, the burden *then* shifts to the petitioner to show otherwise." *Kweicien v. Medina-Maltes,* 2016 U.S. Dist. LEXIS 145310, at *11 (N.D. Ill. Oct. 20, 2016) (emphasis added). *See also Seghal v. Johnson*, 105 F. Supp. 3d 860, 863 (N.D. Ill. 2015); *Delcore v. Holder*, 2015 U.S. Dist. LEXIS 51706, at *4 (N.D. Ill. Apr. 20, 2015); *Cassell v. Napolitano,* 2014 U.S. Dist. LEXIS 42766, at *35 (N.D. Ill. Mar. 31, 2014) ("[the fraudulent marriage] determination is separate and distinct from the agencies' determination regarding whether the petitioner has sustained his/her burden of establishing a bona fide marriage.").

Therefore the defendants must identify substantial and probative evidence that a marriage is fraudulent *before* the burden shifts to petitioners. "There must be affirmative evidence that creates more than a 'reasonable inference' of fraud." *Kweicien*, 2016 U.S. Dist. LEXIS 145310, at *11 (citing *Tawfik*, 20 I&N Dec. at 167–68 and 8 C.F.R. § 204.2(a)(1)(ii)).

As the Defendants acknowledge, the Court reviews agency decisions to determine if they are arbitrary and capricious *or* "unsupported by substantial evidence." (Dkt. 26 at 7). After a review of the record and USCIS and BIA decisions, the Court cannot conclude that substantial evidence supported the BIA's decision that there was

substantial and probative evidence of marriage fraud, barring the Valdivia-Cheslerean I-130 Petition.

## B. The Defendants' Arguments

Defendants argue that the BIA engaged in a *de novo* review to reach its "own independent conclusion" that Garcia and Cheslerean engaged in marriage fraud. (Dkt. 26 at 12). *See Tawfik,* 20 I. & N. Dec. at 168 ("Ordinarily, the district director should not give conclusive effect to determinations made in a prior proceeding, but, rather, should reach his own independent conclusion based on the evidence before him."). Other than generally describing BIA's review of the record, Defendants do not identify any specific evidence that the BIA relied on to reach that conclusion. And a review of the BIA's decision by the Court does not identify any such evidence.

Indeed, the BIA did not explain how Ms. Garcia's failure to present "evidence of a shared life together (including lack of commingled financial assets)" showed that there was substantial and probative evidence of marriage fraud in the record. To the contrary, Cheslerean explained that they were immature and "did not have insurance or much other evidence of a commingled life because we had very little money, and any savings we had we would just spend." (A.R. 54). In describing the USCIS's 2009 denial of the Garcia-Cheslerean petition, the BIA stated that the 2009 denial "*suggested* that Ms. Garcia had married the beneficiary for the purpose of providing him with immigration benefits." (A.R. at 4) (emphasis added). The Defendants do not explain how this "suggestion" is "affirmative evidence that creates more than a 'reasonable inference' of fraud." *Kweicien,* 2016 U.S. Dist. LEXIS 145310, at *11. The

BIA's decision does not provide "a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

Nevertheless, in their brief, Defendants argue that the nature of Cheslerean and Garcia's relationship—marrying within a month of meeting and "separating after a few months", "was not the picture of the *couple that had met its burden* of proof that the marriage was bona fide." (Dkt. 26 at 10–11) (emphasis added). (*See also* Defendants' Reply, Dkt. 30, at 4) (arguing that it was "not irrational for the BIA to conclude in 2011 that petitioner had failed to meet her burden of proof."). These arguments focus on whether Garcia and Cheslerean showed their marriage was bona fide; but they fail to identify any evidence in the record, let alone substantial and probative evidence, the BIA considered in concluding that the Garcia-Cheslerean marriage was fraudulent. *See Delcore*, 2015 U.S. Dist. LEXIS 51706, at *4 (a finding of fraud requires more than finding the couple did not prove their marriage was bona fide.).

In 2009, in denying the Garcia-Cheslerean petition, the USCIS Director explained that Garcia admitted that she and Cheslerean were "just friends." (A.R. at 197). Although the 2009 USCIS denial and BIA 2011 decisions are not the decisions on review to this Court, Defendants raise the issue of the short duration of the Garcia-Cheslerean marriage and point out that Garcia's 2009 affidavit stated that Cheslerean "is now a good friend." (Dkt. 26 at 2). Neither the 2017 BIA decision nor the 2017 USCIS decision rely on this statement to support a finding of marriage

9

fraud. Moreover, this statement by Garcia refers to her relationship with Cheslerean in 2009, not their relationship when they married in 2006. As the BIA has stressed, "we have always recognized that a fraudulent or sham marriage is intrinsically different from a nonviable or nonsubsisting one." *Matter of McKee*, 17 I. & N. Dec. 332; *see also Yong Hong Guan v. INS*, 1993 U.S. App. LEXIS 17962, at *7 (7th Cir. July 16, 1993) ("The fact that a marriage at some point becomes nonviable or nonsubsisting does not in itself indicate that the marriage was a sham at its inception."); *McKee*, 17 I. & N. Dec. 332 (remanding to the immigration court because the court relied on the fact that the parties were not living together, without determining the parties' intent *at the time* of their marriage).[4]

**C. Valdivia's 2017 Affidavit**

In support of affirming the BIA decision, Defendants argue that "Valdivia offered no explanation in his 2017 affidavit why he did not include his account of the 2007 events in his 2009 affidavit filed in support of Cheslerean's marriage to Garcia." (Dkt. 26 at 5). In their reply, Defendants contend that the affidavits submitted "created issues of credibility for all concerned" because Valdivia's 2017 affidavit "made it obvious that he was being less than fully candid in August of 2009 when he did not disclose the true nature of his relationship to Cheslerean." (Dkt. 30 at 4). Nowhere in the USCIS and BIA decisions was Valdivia's credibility an issue, based on his 2017

---

[4] Defendants note that Garcia did not challenge the denial of her petition in 2011. (Dkt. 26 at 11; Dkt. 30 at 4). It is unclear how this is relevant to deciding whether the 2017 BIA determination that the Garcia-Cheslerean marriage was a sham marriage is supported by substantial evidence. Defendants do not cite any authority that this fact is legally significant to the matter before this Court.

10

affidavit or anything else. Defendants argue that the BIA "indicated they reviewed the response to the NOID that included the Valdivia affidavit." The BIA did state that it reviewed the response to the NOID, but nowhere in the decision did the BIA discuss or reference Valdivia's 2017 affidavit or state that it created credibility issues for any of the affiants.

Defendants do not explain how Valdivia's disclosure, that he and Cheslerean fell in love after Cheslerean and Garcia had separated, would have been substantial and probative evidence that Cheslerean and Garcia engaged in marriage fraud when they married. But the Court need not speculate. The USCIS and BIA did not base their decisions on a finding that Valdivia failed to disclose his earlier attraction to Cheslerean. To the contrary, the USCIS found that the evidence submitted in response to the NOID "mainly reiterate[d] what was stated in statements previously submitted in regards to the marriage of Ms. Garcia and Mr. Cheslerean." (A.R. at 39). Thus the Defendants' arguments about the 2017 Valdivia affidavit violate the *Chenery* doctrine. Under that doctrine, an agency may not defend the administrative decision on new ground not set forth in its original decision. *SEC v. Chenery Corp.*, 318 U.S. 80 (1943). *See also Morales-Morales v. Ashcroft*, 384 F.3d 418, 425 (7th Cir. 2004) ("a lawyer's arguments cannot substitute for a reasoned opinion by the IJ or BIA").

**D. Defendants' cases are unpersuasive**

Defendants rely on a number of cases where at least one of the spouses admit that the marriage was entered into for immigration benefits and/or in exchange for money.

In *Ogbolumani,* 557 F.3d 729, family members reported that plaintiff's first wife, Jamiler, received $5,000 to marry him and that the marriage was a "scam," and other relatives reported that they knew nothing about the marriage. Jamiler herself told investigators that plaintiff offered her money and that she accepted payment for her education as part of the marriage arrangement. Plaintiff himself told investigators, "I felt I had no other way to obtain my immigration benefits. I did what I felt I had to do. You are intelligent investigators and basically have my head on a platter." *Id.* at 731–32. The Seventh Circuit concluded that "given the wealth of evidence uncovered during USCIS's investigation, that high hurdle [to obtain a reversal of the BIA decision] is insurmountable." *Id.* at 733. The Seventh Circuit agreed that Plaintiff's admission, combined with other evidence, showed marriage fraud. *Id.* at 734.

In *Ghaly v. INS*, 48 F.3d 1426 (7th Cir. 1995), plaintiff's wife withdrew her visa petition on his behalf because the marriage was fraudulent—she signed an affidavit stating that she married him for a fee so that he could be granted U.S. permanent residency. Similarly in *Matter of Laureano*, 19 I. & N. Dec. 1 (BIA 1983), the visa petition was withdrawn based on an admission that the marriage was solely for immigration benefits. And in *Matter of Kahy*, 19 I. & N. Dec. 803 (B.I.A. 1988), the BIA upheld the decision that the marriage was a sham from its inception because in a sworn statement, the U.S. citizen spouse stated that she had agreed to marry the beneficiary in exchange for $1,000 so that he could remain in the U.S. None of these are the situation here. Unlike these cases, Defendants in the present case have not identified evidence of fraud. There are no (1) admissions by Garcia that she was paid

to marry Cheslerean, (2) statements by family or friends that the marriage was a scam or they were unaware of the marriage, or (3) admissions by Cheslerean or Garcia that the purpose of the marriage was for immigration benefits. Rather the affiants all appear to be consistent about when Cheslerean and Garcia first met and married and the nature of their relationship.

*Yong Hong Guan*, 1993 U.S. App. LEXIS 17962 is a case in which the spouses never lived in the same city, and the court concluded that the Chinese citizen wife never intended to establish a life with her U.S. citizen husband. The wife never joined the petitioner in Boston after she arrived in the U.S., and instead lived in Chicago with her sister. In the present case, Garcia and Cheslerean lived together for a period of months, not a long period of time, but the question is the couples' intent at the time they married. *See Yong Hong Guan v. INS*, 1993 U.S. App. LEXIS 17962, at *7 (7th Cir. July 16, 1993) ("The fact that a marriage at some point becomes nonviable or nonsubsisting does not in itself indicate that the marriage was a sham at its inception.").

Finally, *Matter of Tawfik*, 20 I. & N. Dec. 166, supports Plaintiffs' position. The BIA reversed the USCIS decision because the determination of the first petition did not make an affirmative finding of marriage fraud, and "a reasonable inference does not rise to the level of substantial and probative evidence requisite to the preclusion of approval of a visa petition in accordance with section 204(c) of the Act." As Plaintiffs argue here, the Director's 2009 denial found that petitioners had not met their burden, but the Director did not make an affirmative finding that Garcia and

13

Cheslerean's marriage was a sham. As in *Tawfik,* the Defendants have not shown that "the evidence of such attempt or conspiracy [to enter into a marriage to evade the immigration laws] [is] documented in the alien's file and [is] substantial and probative."[5]

**IV. Conclusion**

For the stated reasons, Plaintiffs' motion for summary judgment [21] is granted and Defendants' motion for summary judgment [23] is denied. The case is remanded to the Board of Immigration Appeals. Civil case terminated.

E N T E R:

Dated: November 5, 2019

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

---

[5] Plaintiffs argue that the record in this case is incomplete and that there were significant unexplained delays in the processing of the petitions. In light of the result, the Court need not address these arguments.